(Reap. Dec. 8266)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

Entry Nos. 738135 and 751959.

(Decided December 3, 1953)

*Eugene R. Pickrell* (*Eugene R. Pickrell* and *Michael Stramiello, Jr.*, of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks*, special attorneys), for the defendant.

*Lamb & Lerch* (*John G. Lerch* of counsel) as *amicus curiae*.

MOLLISON, Judge: These two appeals for reappraisement were consolidated for trial and disposition. The merchandise involved consists of phthalic anhydride, a coal-tar product provided for by name in paragraph 27 (a) of the Tariff Act of 1930 at a compound rate of duty, i. e., a combination of ad valorem and specific duties. Paragraph 27 (c) of the said act is applicable in such situation and reads as follows:

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

The appraiser of merchandise at the port of New York returned a value of 21½ cents per pound, net, packed, based upon the American selling price formula set forth in section 402 (g) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, 52 Stat. 1081. The said formula reads as follows:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

The two shipments of merchandise herein were exported from Belgium on October 12, 1949 (reappraisement No. 198646–A), and November 16, 1949 (reappraisement No. 220814–A). It is the plaintiff's contention that during the period from October through Decem-

ber 1949, domestically produced phthalic anhydride was not being freely offered for sale to all purchasers in the principal market of the United States within the terms of the American selling price formula, *supra*, and that, consequently, no American selling price existed for the said merchandise at the times of its exportation. It is claimed, therefore, that the proper basis of value for the merchandise is United States value, or, alternatively, export value, as those values are defined in section 402 (e) and (d) of the Tariff Act of 1930, as amended.

Counsel for the plaintiff cites in the brief filed in its behalf the case of *Kuttroff, Pickhardt & Co.* v. *United States*, 14 Ct. Cust. Appls. 176, T. D. 41698, for the proposition that the elements of the statutory definition of American selling price must exist at the time of exportation of the merchandise under appraisement in order for that basis of value to become applicable, and it is clear from a reading of the brief filed by counsel for the defendant that the soundness of the statement and the applicability of the authority are not questioned.

It is apparent from the record made and from a consideration of the brief filed on behalf of the plaintiff that the element of statutory American selling price which the plaintiff contends failed to exist at the time of exportation of the instant merchandise was the element of free offer for sale, that is to say, it is affirmatively contended that at the time in question domestic phthalic anhydride was not freely offered for sale in the principal market of the United States to all who cared to buy it.

In support of this contention plaintiff offered evidence along the following lines: (a) Oral evidence as to the background factors which would tend to create an abnormal market situation with respect to the offer and sale of domestic phthalic anhydride; (b) oral and documentary evidence with respect to solicitations of domestic manufacturers or producers for offers for sale of domestic phthalic anhydride, and the response or lack of response thereto; and (c) oral and documentary evidence with respect to the condition of the market for domestic phthalic anhydride—all the foregoing with particular reference to the period from October to December, inclusive, 1949, which includes the times of exportation of the instant merchandise.

It was established that phthalic anhydride is manufactured from naphthalene, which, in turn, is made from coal tar which results from coking operations in steel production. There is evidence in the record, and the court may take judicial notice as well, of the fact that in the period of October–November 1949 a general strike in the steel industry was in effect in the United States which greatly diminished the production of steel. It is probably reasonable to infer from that fact that coking operations were also diminished and that the domestic production of naphthalene was also affected. How soon this would affect the

domestic production of phthalic anhydride, it would seem, would depend upon the supply of naphthalene on hand at the beginning of the strike and the rate of its use—factors as to which there is little evidence in the record and as to which the doctrine of judicial notice is not applicable. There is some evidence in the record that as late as October 31, 1949, the supply of naphthalene was holding out.

It was also established by the evidence that at or about the times in question an explosion in the plant of one of the larger domestic producers of phthalic anhydride had stopped production of the substance in that plant.

The foregoing factors constitute the background upon the basis of which the plaintiff contends that at the times here pertinent an abnormal or "unnormal" market for domestic phthalic anhydride developed in the sense that the substance was no longer "freely offered for sale" within the meaning of that term as used in the statute.

As establishing the results which flowed from the foregoing factors, plaintiff has offered evidence of solicitations by the actual importer of the merchandise here in issue, and by two other firms, of five of the major domestic manufacturers or producers of phthalic anhydride for offers of sale of that product.

It appears that all of the solicitations as to which evidence was offered were made on or after October 25, 1949, and it would seem that they, and the response or lack of response to them, would not necessarily have reference to the situation which obtained on October 12, 1949, the date of exportation of the first of the two importations here involved. Be that as it may, however, I am of the opinion that the evidence developed with respect to these solicitations, whether considered by itself or in conjunction with the other evidence offered by the plaintiff, failed to establish any material ultimate fact which would be probative of plaintiff's claim.

So far as the solicitations by the actual importer are concerned, it does not appear, first, that the said solicitations were for offers for sale *for domestic consumption*. The American selling price formula in section 402 (g), *supra*, is concerned with the price at which merchandise is freely offered for sale "for domestic consumption," these words having been introduced into the statute by section 8 of the Customs Administrative Act of 1938, *supra*. The evidence as to the solicitations by the actual importer herein shows them to have been very general in their character and certainly not limited to offers of merchandise for domestic consumption.

Furthermore, the actual importer of the merchandise here in issue was an importer *and exporter* of phthalic anhydride, a reseller rather than a user, and these facts could hardly have been unknown to those to whom the solicitations were made. If the material was in short supply, as seems evident from all of the facts in the case, there might

have been an understandable reluctance to offer to sell to one who desired it for export, or for resale, rather than for consumption.

This facet of the picture is pointed up by the evidence offered with respect to a solicitation made by the Chemo Puro Manufacturing Corp. There is no indication in the copy of the written letter of solicitation, received in evidence as plaintiff's exhibit 8, that the firm was soliciting an offer for domestic consumption. The reply received from the addressee, the National Aniline Division of the Allied Chemical & Dye Corp., one of the concerns named as one of the five major domestic producers of phthalic anhydride, quoted a price of 22½ cents per pound, but expressed inability to indicate delivery dates "at present." The reply continues:

* * * Meanwhile, we would appreciate having you advise us whether this material is for your own consumption, or for resale.

—thus indicating a reluctance to sell for other than domestic consumption.

In the brief filed on behalf of the plaintiff, its counsel argues that this sentence indicates that the offer, if such it was, was restrictive "in that they attempted to control the ultimate use to be made of the commodity." The statute itself, it seems to me, makes the restriction to offers "for domestic consumption," so that it can hardly be considered that the plaintiff's point is well taken.

The remaining evidence with respect to written solicitations for offers relates to a solicitation by a concern named Aniline Color & Chemical Corp. addressed to one of the five major producers. Here, again, the solicitation does not indicate whether it seeks an offer for domestic consumption or otherwise, and I do not consider the reply, stating that the producer was "not in a position to offer as we are fully committed for our entire production," as any substantial evidence tending to establish that at the times in question domestic phthalic anhydride was not freely offered for sale for domestic consumption.

The evidence offered by the plaintiff with respect to telephonic solicitations for offers, and the responses or lack of responses thereto, is of the same nature and subject to the same criticism as the evidence represented by the written solicitations. I am of the opinion that, in and of themselves, mere negative responses to the kind of solicitations shown to have been made in this case are not evidence that domestic phthalic anhydride was not "freely offered for sale for domestic consumption" within the meaning of the statute.

With respect to the evidence offered as to market conditions, as revealed by market reports, I have carefully examined the excerpts from the October 24 and 31, 1949, issues of "Oil, Paint and Drug Reporter," a weekly publication described by one of plaintiff's witnesses as "the best known trade paper for chemicals," offered in

evidence by the plaintiff as exhibits 13 and 14 and received without objection on the part of the defendant

These reports indicate that the supply of phthalic anhydride was "tight" or "short," but there is no indication therein that the supply had been exhausted or that it was completely or substantially unavailable. On the contrary, these reports indicate that there was in existence a supply of naphthalene; that production of phthalic anhydride therefrom was being stepped up considerably; and that the price of phthalic anhydride continued unchanged. These factors would seem to indicate that domestic phthalic anhydride was an item continually available in the market.

On the subject of market conditions, plaintiff also offered the oral testimony of Howard G. Potts, the examiner in the office of the appraiser of merchandise who passed the instant shipments. Mr. Potts testified that, in an effort to ascertain the facts with respect to market conditions for the period from October 1, 1949, to and including December 31, 1949, he had contacted representatives of four of the major producers of domestic phthalic anhydride and was informed by them that their firms were delivering phthalic anhydride against contracts only and allocating their production against contracts.

Other evidence in the case indicates that there were at the times here pertinent at least nine producers of domestic phthalic anhydride. The evidence given by Mr. Potts relates only to four of these, and would not, standing alone, establish the plaintiff's claim. When it is considered together with all of the other evidence bearing upon market conditions, it indicates merely a tightness or shortness in the market of phthalic anhydride, but by no means a withdrawal of that commodity from the market.

The test of whether an article is freely offered for sale under the American selling price formula, from the standpoint of availability, was stated by our appellate court in the *Kuttroff, Pickhardt & Co.* case, *supra*, as follows:

To freely offer an article for sale within the contemplation of subdivision (f) [Note: Section 402 (f) of the Tariff Act of 1922, predecessor in substantially identical language to section 402 (g) of the present act] it should, at least, appear that some reasonable quantity of the offered article was ready or could be produced for reasonably prompt delivery.

It must be remembered that the merchandise at bar was appraised on the basis of the American selling price formula, and that the appraiser is presumed to have found such facts—including availability—as would support the return of value. The burden was on the plaintiff here to negative the existence of at least one of the elements of value returned by the appraiser. I am of the opinion that all of the evidence adduced fails to establish that some reasonable quantity of domestic

phthalic anhydride was not ready or could not be produced for reasonably prompt delivery in accordance with the elements of the American selling price formula as set forth in the statute.

I therefore find that the plaintiff has failed to make out a *prima facie* case sufficient to overcome the presumptively correct value found by the appraiser on the basis of American selling price.

I find as facts:

(1) That the merchandise consists of phthalic anhydride exported from Belgium on or about October 12, 1949, and November 16, 1949.

(2) That at the times of exportation of the said merchandise there existed a similar competitive article manufactured or produced in the United States, to wit, domestic phthalic anhydride.

(3) That at the said times of exportation domestic phthalic anhydride was freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market.

(4) That at the said times of exportation the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such domestic phthalic anhydride was freely offered for sale under the conditions expressed in finding No. (3) above, was the value returned by the appraiser in each case.

I conclude as matters of law:

I. That the proper basis for the determination of the value of the merchandise here involved is American selling price, as defined in section 402 (g) of the Tariff Act of 1930, as amended, and

II. That such value in each case was the value returned by the appraiser.