(A. R. D. 53)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

Entry Nos. 738135; 751959.

Second Division, Appellate Term

(Decided December 16, 1954)

*Michael Stramiello, Jr.*, for the appellant.

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellee.

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* and *James F. Donnelly* of counsel) as *amicus curiae.*

Before LAWRENCE, RAO, and FORD, Judges;
RAO, J., not participating

FORD, Judge: This is an application for review of the decision and judgment of the trial court (*Hudson Shipping Co., Inc.* v. *United*

*States*, 31 Cust. Ct. 419, Reap. Dec. 8266), which was filed under the provisions of title 28 U. S. C. section 2636 (a).

Pursuant to rule 31 of the United States Customs Court, appellant herein alleges that the trial court erred in 19 respects. In view of the state of this record, and the conclusion which we have reached upon a full consideration of the entire record, we do not deem it necessary to set out in full all the errors assigned by appellant, although each error assigned has had our careful consideration. The two assignments of errors which we consider necessary to a proper consideration and determination of this application are as follows:

13. In finding and holding that the plaintiff failed to make out a *prima facie* case sufficient to overcome the presumptively correct value found by the Appraiser on the basis of American Selling Price.

14. In not finding and holding that the plaintiff below made out a *prima facie* case sufficient to overcome the presumptively correct value found by the Appraiser on the basis of American Selling Price.

The involved merchandise consists of phthalic anhydride, a coal-tar product which is provided for under paragraph 27 (a) of the Tariff Act of 1930. It was imported on October 12 and November 16, 1949. The appraiser found that the merchandise should be appraised on the basis of American selling price, as defined in section 402 (g) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, 52 Stat. 1081, and found a value therefor of 21½ cents per pound, net, packed. Said section 402 (g), as amended, is as follows:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

In disposing of the question of whether or not the appellant herein had made out a *prima facie* case, the trial court held as follows:

It must be remembered that the merchandise at bar was appraised on the basis of the American selling price formula, and that the appraiser is presumed to have found such facts—including availability—as would support the return of value. The burden was on the plaintiff here to negative the existence of at least one of the elements of value returned by the appraiser. I am of the opinion that all of the evidence adduced fails to establish that some reasonable quantity of domestic phthalic anhydride was not ready or could not be produced for reasonably prompt delivery in accordance with the elements of the American selling price formula as set forth in the statute.

I therefore find that the plaintiff has failed to make out a *prima facie* case sufficient to overcome the presumptively correct value found by the appraiser on the basis of American selling price.

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164 T. D. 45276, discussing the procedure to be followed in value cases and the burden resting upon the appellant, the Court of Customs and Patent Appeals stated as follows:

Under the statute it is necessary to determine the foreign value, if there be one, by the tests prescribed in paragraph (b), *supra*, and also the export value, if there be one, by the tests prescribed in paragraph (c), *supra*. The merchandise is then to be appraised at whichever of the found values is the higher. If neither a foreign nor an export value *"can be ascertained to the satisfaction of the appraising officers,"* then the merchandise is to be appraised at the United States value determined by the tests prescribed in paragraph (d), *supra*. * * *

\* \* \* \* \* \* \*

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra*. If the importer failed to do this, then his appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser— in this instance the United States value—would have remained in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120.

Under the rules stated it was incumbent upon the importer in this case, upon its appeal to reappraisement, to show, as in all judicial proceedings, (a) what the foreign value as defined by paragraph (b), *supra*, was, or that there was no such foreign value; and (b) what the export value, if any, as defined by paragraph (c), *supra*, was.

If the importer failed to show any one of these essential elements, then his appeal was subject to dismissal by the trial judge.

\* \* \* \* \* \* \*

The courts may not properly supply from imagination the essentials in which the proofs are deficient.

\* \* \* \* \* \* \*

The burden of showing this rested, in this case, upon the importer. It was not incumbent upon the Government to present proof to sustain the United States value, and the importer presented no proof of export value which it became necessary for the Government to overcome.

In *United States* v. *International Forwarding Co.*, 27 C. C. P. A. (Customs) 21, C. A. D. 56, the Court of Customs and Patent Appeals held as follows:

In the case at bar appellee was clearly under the burden, on its own theory of the case, of establishing the absence of a foreign value of the involved merchandise.

Section 501 of said Tariff Act of 1930 provides in part:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

So in the case at bar there is simply a question of proof negativing the existence of a foreign value of the merchandise, and that question confronted appellee at the very threshold of the trial. Under these circumstances we would not be warranted in remanding the case with directions that a new trial be ordered.

The judgment appealed from is *reversed*, and the cause is *remanded* with directions to remand the case to the trial court with instructions to dismiss the appeals for reappraisement.

In dealing with the question of presumption of correctness attending the value found by the appraiser, the Court of Customs and Patent Appeals, in *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264, held as follows:

Under prior tariff acts the courts had declared the general rule to be that when appeal was taken to a single judge sitting in reappraisement no presumption of correctness attended the appraisement of the local appraiser and the trial before the single judge was a proceeding *de novo*. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324; *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164,. T. D. 45276, with their respective citations. This rule obviously was changed by the above-quoted provision of the Tariff Act of 1930, and it is now incumbent upon an appealing party to overcome the presumption of correctness of the value found by the local appraiser, but even under the prior rule this court repeatedly held that the burden rested upon a party appealing "to meet every material issue involved in the case." *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057, with cases cited.

\*        \*        \*        \*        \*        \*        \*

It is quite true that there is no evidence showing that this or any similar merchandise was freely offered for sale, but the burden was not upon the Government to show the affirmative; it was upon the importer to show the negative.

In view of the obvious failure of the importer to sustain the burden resting upon it with respect to United States value, there should have been a dismissal of its appeal to reappraisement, the result of which would have been to leave in full force and effect the value fixed by the local appraiser. We think such action should be taken now.

The importer had its day in court and failed to produce evidence without which, under its own theory of law, it can not prevail.

Again, in *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 299, T. D. 40313, in considering the question of the burden of proof and whether or not a *prima facie* case had been established, the Court of Customs Appeals held:

We now come to the consideration of whether on the Government rested the burden of first proceeding and of proving that there was an article similar to or competitive with azoflavine manufactured or produced in the United States. If the Government was not bound to assume that burden and if it was the duty of the importer to prove prima facie the nonexistence of any such article, then the importer had no right to prove United States value, and failed to make out a case.

The importer demanded, as he had a right to do under the provisions of administrative section 501, a reappraisement of the merchandise. That demand raised the issue as to the value of the merchandise and vested the general appraiser with jurisdiction to try the question thereby raised and after hearing the parties and

their witnesses to judicially, not administratively, determine the value of the importation for duty purposes.

The importer, and not the Government, invoked the jurisdiction of the general appraiser, and upon the former devolved the duty of first proceeding and therefore the burden of establishing at least prima facie the value of the imported merchandise. In effect, the importer complained to the general appraiser that the administrative appraisement was wrong. Unless that complaint was wholly without merit or a chance shot in the dark, the importer must have had some information, some evidence showing or tending to show that there was no similar competitive article produced in the United States.

\* \* \* \* \* \* \*

The appraisement of the local appraiser makes no disclosure of a competitive article and it may be that the Government would have been unable, if called upon, to prove that such an article existed. Nevertheless, the importer must be held to the rule that a complainant's right to relief depends primarily on the strength of his own case and not on the weakness of that of his adversary.

In view of the accurate and complete summation of the evidence offered by counsel for the plaintiff in the court below in support of his contention that phthalic anhydride was not freely offered for sale during the period in question, within the requirements of section 402 (g), *supra*, we quote from the opinion of the trial court as follows:

It is apparent from the record made and from a consideration of the brief filed on behalf of the plaintiff that the element of statutory American selling price which the plaintiff contends failed to exist at the time of exportation of the instant merchandise was the element of free offer for sale, that is to say, it is affirmatively contended that at the time in question domestic phthalic anhydride was not freely offered for sale in the principal market of the United States to all who cared to buy it.

In support of this contention plaintiff offered evidence along the following lines: (a) Oral evidence as to the background factors which would tend to create an abnormal market situation with respect to the offer and sale of domestic phthalic anhydride; (b) oral and documentary evidence with respect to solicitations of domestic manufacturers or producers for offers for sale of domestic phthalic anhydride, and the response or lack of response thereto; and (c) oral and documentary evidence with respect to the condition of the market for domestic phthalic anhydride—all the foregoing with particular reference to the period from October to December, inclusive, 1949, which includes the times of exportation of the instant merchandise.

It was established that phthalic anhydride is manufactured from naphthalene, which, in turn, is made from coal tar which results from coking operations in steel production. There is evidence in the record, and the court may take judicial notice as well, of the fact that in the period of October–November 1949 a general strike in the steel industry was in effect in the United States which greatly diminished the production of steel. It is probably reasonable to infer from that fact that coking operations were also diminished and that the domestic production of naphthalene was also affected. How soon this would affect the domestic production of phthalic anhydride, it would seem, would depend upon the supply of naphthalene on hand at the beginning of the strike and the rate of its use—factors as to which there is little evidence in the record and as to which the doctrine of judicial notice is not applicable. There is some evidence

in the record that as late as October 31, 1949, the supply of naphthalene was holding out.

It was also established by the evidence that at or about the times in question an explosion in the plant of one of the larger domestic producers of phthalic anhydride had stopped production of the substance in that plant.

The foregoing factors constitute the background upon the basis of which the plaintiff contends that at the times here pertinent an abnormal or "unnormal" market for domestic phthalic anhydride developed in the sense that the substance was no longer "freely offered for sale" within the meaning of that term as used in the statute.

*     *     *     *     *     *     *

It appears that all of the solicitations as to which evidence was offered were made on or after October 25, 1949, and it would seem that they, and the response or lack of response to them, would not necessarily have reference to the situation which obtained on October 12, 1949, the date of exportation of the first of the two importations here involved. Be that as it may, however, I am of the opinion that the evidence developed with respect to these solicitations, whether considered by itself or in conjunction with the other evidence offered by the plaintiff, failed to establish any material ultimate fact which would be probative of plaintiff's claim.

So far as the solicitations by the actual importer are concerned, it does not appear, first, that the said solicitations were for offers for sale *for domestic consumption.* The American selling price formula in section 402 (g), *supra,* is concerned with the price at which merchandise is freely offered for sale "for domestic consumption." these words having been introduced into the statute by section 8 of the Customs Administrative Act of 1938, *supra.* The evidence as to the solicitations by the actual importer herein shows them to have been very general in their character and certainly not limited to offers of merchandise for domestic consumption.

Furthermore, the actual importer of the merchandise here in issue was an importer *and exporter* of phthalic anhydride, a reseller rather than a user, and these facts could hardly have been unknown to those to whom the solicitations were made. If the material was in short supply, as seems evident from all of the facts in the case, there might have been an understandable reluctance to offer to sell to one who desired it for export, or for resale, rather than for consumption.

This facet of the picture is pointed up by the evidence offered with respect to a solicitation made by the Chemo Puro Manufacturing Corp. There is no indication in the copy of the written letter of solicitation, received in evidence as plaintiff's exhibit 8, that the firm was soliciting an offer for domestic consumption. The reply received from the addressee, the National Aniline Division of the Allied Chemical & Dye Corp., one of the concerns named as one of the five major domestic producers of phthalic anhydride, quoted a price of 22½ cents per pound, but expressed inability to indicate delivery dates "at present." The reply continues:

> * * * Meanwhile, we would appreciate having you advise us whether this material is for your own consumption, or for resale.

—thus indicating a reluctance to sell for other than domestic consumption.

In the brief filed on behalf of the plaintiff, its counsel argues that this sentence indicates that the offer, if such it was, was restrictive "in that they attempted to control the ultimate use to be made of the commodity." The statute itself, it

seems to me, makes the restriction to offers "for domestic consumption," so that it can hardly be considered that the plaintiff's point is well taken.

\* \* \* \* \* \* \*

The evidence offered by the plaintiff with respect to telephonic solicitations for offers, and the responses or lack of responses thereto, is of the same nature and subject to the same criticism as the evidence represented by the written solicitations. I am of the opinion that, in and of themselves, mere negative responses to the kind of solicitations shown to have been made in this case are not evidence that domestic phthalic anhydride was not "freely offered for sale for domestic consumption" within the meaning of the statute.

With respect to the evidence offered as to market conditions, as revealed by market reports, I have carefully examined the excerpts from the October 24 and 31, 1949, issues of "Oil, Paint and Drug Reporter," a weekly publication described by one of plaintiff's witnesses as "the best known trade paper for chemicals," offered in evidence by the plaintiff as exhibits 13 and 14 and received without objection on the part of the defendant.

These reports indicate that the supply of phthalic anhydride was "tight" or "short," but there is no indication therein that the supply had been exhausted or that it was completely or substantially unavailable. On the contrary, these reports indicate that there was in existence a supply of naphthalene; that production of phthalic anhydride therefrom was being stepped up considerably; and that the price of phthalic anhydride continued unchanged. These factors would seem to indicate that domestic phthalic anhydride was an item continually available in the market.

On the subject of market conditions, plaintiff also offered the oral testimony of Howard G. Potts, the examiner in the office of the appraiser of merchandise who passed the instant shipments. Mr. Potts testified that, in an effort to ascertain the facts with respect to market conditions for the period from October 1, 1949, to and including December 31, 1949, he had contacted representatives of four of the major producers of domestic phthalic anhydride and was informed by them that their firms were delivering phthalic anhydride against contracts only and allocating their production against contracts.

Other evidence in the case indicates that there were at the times here pertinent at least nine producers of domestic phthalic anhydride. The evidence given by Mr. Potts relates only to four of these, and would not, standing alone, establish the plaintiff's claim. When it is considered together with all of the other evidence bearing upon market conditions, it indicates merely a tightness or shortness in the market of phthalic anhydride, but by no means a withdrawal of that commodity from the market.

We come now to the question of whether or not, under the authorities heretofore cited and based upon the facts hereinbefore detailed, the appellant herein has established a *prima facie* case, that is, that at the dates of exportation of the involved merchandise, phthalic anhydride, was not freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market. On the question of what constitutes "prima facie evidence," we quote the following from Words and Phrases, Permanent Edition, volume 33, pages 549, 550:

"Prima facie evidence" means sufficient evidence upon which a party will be entitled to recover if his opponent produces no further testimony. Eckman Chemical Co. v. Chicago & N. W. Ry. Co., 185 N. W. 444, 446, 107 Neb. 268.

Prima facie evidence means evidence "which, standing alone and unexplained," maintains the proposition and warrants "the conclusion to support which it is introduced." Chandler v. Prince, 105 N. E. 1076, 1077, 217 Mass. 451.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Prima facie evidence" means evidence which is sufficient to establish the fact unless rebutted; evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced. La Fitte v. City of Ft. Collins, 93 P. 1098, 1099, 42 Colo. 293; McCombs v. State, 99 S. W. 1017, 1018, 50 Tex. Cr. R. 490, 9 L. R. A., N. S., 1036, 123 Am. St. Rep. 855, 14 Ann. Cas. 72.

A *prima facie* case is defined in the same volume, at page 545, as follows:

"Prima facie case" means only that the case has proceeded upon sufficient proof to that stage where it must be submitted to the jury, and not decided against the plaintiff as a matter of law. A prima facie case does not necessarily mean that judgment goes in favor of the plaintiff as a matter of law. The jury are still the judges of the sufficiency of the showing to call for a verdict in plaintiff's favor, and, where there is no affirmative defense, strictly speaking, the jury are to measure plaintiff's rights, having in view that he has the burden of proof. Welch v. Creech, 153 P. 355, 360, 88 Wash. 429, L. R. A. 1918A, 353.

Corpus Juris Secundum, volume 72, pages 499–500, under the heading "PRIMA FACIE," contains the following:

Latin words which have, by long usage, become a part of the English language, and the meaning of which is readily understood by a person of common understanding. They are words of very common use in the courts and in newspaper reports of judicial decisions, and they import that the evidence produces for the time being a certain result, but that the result may be repelled. They have been defined as meaning apparent. They have further been defined as meaning as it first appears; at first sight; at first view; on its face; on the face of it; on the first appearance; presumably; so far as can be judged by the first disclosure.

The term has no narrow or restricted meaning synonymous with "inference" or "presumption," but it has been held to be equivalent to "presumably" &ast; &ast; &ast; .

The following is quoted from 32 Corpus Juris Secundum, pages 1040–1042:

*Prima facie evidence* is that which, either alone or aided by other facts presumed from those established by the evidence, shows the existence of the fact which it is adduced to prove, unless overcome by counter evidence; evidence which, unexplained or uncontradicted, is sufficient to maintain the proposition affirmed. Prima facie evidence is sufficient, unless contradicted by other evidence, to establish for all purposes the existence of a fact in issue; that is, it is sufficient to satisfy the burden of proof and to support a verdict in favor of the party by whom it is introduced when not controverted by other evidence. It may be rebutted or contradicted by other evidence, and, unless there is no other controlling evidence and no discrediting circumstances, it is not conclusive and does not require a verdict for the party whose contention it supports.

*Prima facie case.* A prima facie case is a case made out by proper and sufficient testimony; one in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if all the evidence to the contrary be disregarded; one in which the adduced proof, standing alone, warrants a finding of the fact to be proved; one which is apparently established by evidence adduced by plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted; one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side; one which, in the absence of explanation or contradiction, constitutes an apparent case sufficient in the eyes of the law to establish the fact, and if not rebutted remains sufficient for that purpose; one which is made out until the contrary is proved; one which is received, or which continues, until the contrary is shown; one which will support a judgment, unless other evidence is introduced; one which has proceeded on sufficient proof to a stage where it must be submitted to the jury, and not decided against plaintiff as a matter of law; or such established facts as the law recognizes as being sufficient to overcome the inertia of the court and to authorize affirmative action by the court, in the absence of evidence on the other side; the phrase sometimes is used synonymously with "prima facie evidence." A prima facie case is not necessarily conclusive even though no other evidence is introduced; a finding may be made for the adverse party where the evidence creating the prima facie case is insufficiently strong to require a finding for the party who introduced it. Similarly, where the testimony offered by the party having the burden of proof is inherently weak, or contains contradictions or inconsistencies, a prima facie case may not be made out, and a finding for the adverse party may be made even though he offers no evidence. A prima facie case must be sufficient in itself; if it depends on an inference to be drawn, the facts shown in evidence must be sufficiently explanatory of themselves to justify the inference, and the evidence must overcome every adverse inference or presumption. A "strong fact" is not the same thing as a prima facie case.

In an effort to establish that phthalic anhydride was not freely offered for sale for domestic consumption within the provisions of said section 402 (g), appellant "offered evidence of solicitations by the actual importer of the merchandise here in issue, and by two other firms, of five of the major domestic manufacturers or producers of phthalic anhydride for offers of sale of that product." "Mr. Potts testified that, in an effort to ascertain the facts with respect to market conditions for the period from October 1, 1949, to and including December 31, 1949, he had contacted representatives of four of the major producers of domestic phthalic anhydride and was informed by them that their firms were delivering phthalic anhydride against contracts only and allocating their production against contracts." Other evidence shows that at the dates here involved there were at least nine domestic producers of phthalic anhydride. The correctness of this statement is shown by the following from appellant's reply brief:

* * * The Appellant submits that when prospective purchasers of a commodity have contacted four of nine producers of the commodity and have knowledge that a fifth producer was not manufacturing due to a plant casualty * * *.

This record contains no evidence that the other five domestic producers of phthalic anhydride were not freely offering for sale for domestic consumption phthalic anhydride within the provisions of said section 402 (g). It is our view that such evidence falls far short of establishing a *prima facie* case, as defined by the authorities, hereinbefore set out.

The record, as set out above, also shows that appellant contacted representatives of four of the major producers of phthalic anhydride and was informed that they were delivering phthalic anhydride against contracts only and were allocating their production against contracts. Some of such reports indicated that said firms were interested only in supplying the domestic market, and were not interested in sales for resale or for exportation. However, if such responses had been negative as to sales for export, this would not have been sufficient to establish that such merchandise was not available and being offered and sold under the provisions of said section 402 (g). We, therefore, have no hesitancy in affirming the action of the trial court, holding that the appellant herein had failed to make out a *prima facie* case sufficient to overcome the presumptively correct value found by the appraiser on the basis of American selling price.

Should we accept the evidence herein as establishing that the firms solicited for offers were not freely offering phthalic anhydride within the terms of said section 402 (g), it would be necessary to assume that the firms not solicited were not freely offering said merchandise within the terms of said section 402 (g), in order to hold that appellant had made out a *prima facie* case. This we may not do. "The courts may not properly supply from imagination the essentials in which the proofs are deficient." *United States* v. *Malhame, supra.*

We, therefore, find as facts:

1. That the involved merchandise consists of phthalic anhydride exported from Belgium on or about October 12 and November 16, 1949.

2. That at the dates of exportation of said merchandise similar competitive phthalic anhydride was being produced in the United States.

3. That at the said dates of exportation domestic phthalic anhydride was being freely offered for sale for domestic consumption, as provided in section 402 (g) of the Tariff Act of 1930.

4. That at the dates of exportation of the involved merchandise, the price at which such domestic phthalic anhydride was being freely offered for sale, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption, in the ordinary course of trade in the usual wholesale quantities, within the limitations specified

in said section 402 (g), was the value returned by the appraiser in each case.

We conclude as matter of law:

1.   That the proper basis for the determination of the value of the involved phthalic anhydride is the American selling price, as defined in section 402 (g) of the Tariff Act of 1930, as amended.

2.   That such value in each case was the value returned by the appraiser.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be rendered accordingly.