**No. 60137.**—Hudson Shipping Co., Inc. *v.* United States, petition 7210–R (New York).

JOHNSON, Judge: This is a petition for the remission of additional duties assessed under section 489 of the Tariff Act of 1930 on two shipments of phthalic anhydride from Belgium. The merchandise in entry No. 738135 was imported on or about October 25, 1949, and was entered at the invoice price of $13.73 per 100 pounds, less nondutiable charges. The merchandise in entry No. 751959 was imported on or about November 29, 1949, and was entered at $0.11¾ per pound. Both entries were appraised at a value of $0.215 per pound, net, packed, based on the American selling price, as defined in section 402 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Appeals for reappraisement were taken, wherein it was claimed that the proper basis of value for the merchandise was United States value, or, alternatively, export value, as those values are defined in section 402 (e) and (d), respectively, of said tariff act, as amended. However, the value returned by the appraiser was held to be the proper dutiable value of the merchandise. *Hudson Shipping Co., Inc.* v. *United States*, 31 Cust. Ct. 419, Reap. Dec. 8266, affirmed 33 Cust. Ct. 602, A. R. D. 53, affirmed 43 C. C. P. A. (Customs) 19, C. A. D. 604.

At the trial, Fred Fallek, president of Fallek Products Co., Inc., importer of the within merchandise, and Walter J. Mercer, president of Hudson Shipping Co., Inc., customs broker, were called as witnesses for the petitioner. Their testimony may be summarized as follows:

At the time these entries were made, Mr. Fallek was aware of the provisions of paragraph 27 of the Tariff Act of 1930, which provided that ad valorem duties on phthalic anhydride should be based upon the American selling price or the United States value of the merchandise. He made inquiries to determine which of the values was applicable to his importations. He consulted his customs broker, Hudson Shipping Co., Inc., and his attorney about the possibility of having the merchandise appraised at the United States value. He wrote letters to a great number of American producers in order to determine whether the material was available in the domestic market. Copies of these letters and the replies received were submitted to the appraiser prior to appraisement, as were copies of articles in trade papers and the Oil, Paint, and Drug Reporter, stating that a shortage existed, and copies of invoices of sales of imported phthalic anhydride made in the United States. He disclosed all the information he had to the appraiser prior to appraisement. In making entry at a lower value than the final appraised value, his purpose was to bring a test case to determine what the proper dutiable value was. There was no intention on his part or on the part of anyone else in his concern to defraud the revenues of the United States.

· The customs broker also made inquiries at the appraiser's office as to the dutiable value of the merchandise and was advised that the American selling price was the proper value. He asked the importer to investigate market conditions and values, and he, himself, called up every known producer in New York to determine whether there was a freely offered price for phthalic anhydride and ascertained to his own satisfaction that there was not. He represented to the appraiser that the United States value was the proper dutiable value of the merchandise and made several trips to Washington in an endeavor to have the Bureau of Customs authorize the use of that value. He submitted to the appraiser and to the Bureau all the information available to him concerning the market conditions and the market value of phthalic anhydride. There was no intent on his part to defraud the revenues of the United States in making entry at a lower value than the final appraised value.

The entries herein were amended once to reflect the higher value and then reamended for the purpose of bringing a test case. Appraisement of other entries of phthalic anhydride, between October 1949 and March 1950, was withheld at the request of the importer, pending the outcome of the litigation. All duties were paid on all of the entries, including the two before the court, on the basis of the American selling price.

Counsel for the Government stated that the testimony summarized above was substantially in accord with the information in his possession and that the case in reappraisement was a test case brought by and with the knowledge and consent of the appraising officials and of Government attorneys.

The record herein shows that the importer and the petitioning customs broker made inquiries as to the value of the merchandise; that they disclosed the information in their possession to customs officials; that there was a difference of opinion between the appraiser and the importer as to the dutiable value of the merchandise; that a test case was brought to determine such value; and that the litigation was diligently prosecuted in this court and the court of appeals. On this record, we hold that entry of the merchandise at a value less than the final appraised value was without intention to defraud the revenue of the United States, or conceal or misrepresent the facts of the case, or deceive the appraiser as to the value of the merchandise.

The petition is granted. Judgment will be rendered accordingly.